## A. C. HAMILTON AND ROBERT W. MAXFIELD
## v. CHARLES HUCK AND LUTHER R. WADE

5-5450                                          464 S. W. 2d 68

Opinion delivered March 8, 1971

*Givens & Capps,* for appellants.

*Cockrill, Laser, McGehee, Sharp & Boswell,* for appellees.

CARLETON HARRIS, Chief Justice. Appellant, Robert W. Maxfield, on September 17, 1969, at approximately 3:00 a.m., was operating a large tractor and trailer truck owned by appellant, A. C. Hamilton, the Hamilton vehicle traveling east on Interstate No. 40 near De-Valls Bluff, Arkansas. Interstate No. 40 is a four-lane concrete highway, two lanes running east, and two lanes running west, the lanes being divided in this particular area by a three foot concrete dividing wall. The evidence reflects that Maxfield was traveling at a speed of approximately 65 miles per hour, in the left-hand east bound lane and passed a tractor trailer unit operated

by Ray DeVall who was traveling in the right-hand east bound lane. DeVall blinked his headlights as a matter of indicating to Maxfield that the latter could safely pull back into the right-hand lane in front of DeVall, and when this was done, the vehicle driven by appellant struck a truck which was likewise proceeding to the east. From the testimony:

"So, as I passed the second Roadway truck, he blinked his lights, and I give a signal, and I looked in my mirror to make sure that I was clear, and I was clear, and I came in, and, again, I touched my marker lights, and I could see straight ahead, and there was nothing in front of me nowhere that I could see, and all of a sudden, just out of nowhere, I can see an object approximately from here to the end of the Court Room wall, just about this distance before I could actually tell that there was an object, and me traveling between sixty and sixty-five miles per hour, it appears that this object is doing at least ten to fifteen miles an hour to me, and, so, from here to the Court Room wall at that speed, at sixty to sixty-five miles an hour, that would come at you pretty quick."

According to Maxfield, and also DeVall, the front truck, driven by Luther R. Wade, and owned by Charles Huck, appellees herein, was unlighted. When the collision occurred, Maxfield's truck, which had already been cut to the left in an effort to avoid the crash, struck the concrete dividing wall. Maxfield was injured, and the truck was badly damaged. Subsequently, Maxfield and Hamilton instituted suit for personal injuries and property damage respectively, Hamilton also suing for loss of profits occasioned by the inability to use the truck. On trial, the jury returned a verdict for appellees, and from the judgment so entered, appellants bring this appeal. For reversal, it is asserted that the verdict was contrary to the preponderance of the evidence; that appellees, through counsel, intentionally brought to the jury's attention the fact that repairs to the damaged vehicle had been paid for largely through insurance, and that the court erred in ruling that loss of profits of a commercial vehicle is not a recoverable element of damage in Arkansas.

We cannot, on appeal, decide this litigation on the question of whether the verdict was against the preponderance of the evidence. While the trial court had the authority to set aside the jury verdict for this reason,[1] we are only concerned with whether there was substantial evidence to support the verdict. In *Superior Forwarding Co.* v. *Sikes,* 233 Ark. 932, 349 S. W. 2d 818, this court said that we will affirm a jury verdict on appeal if there is any substantial evidence to support it, even though the verdict may appear to be against the preponderance of the evidence. Accordingly, while there was certainly evidence to support the view of appellants, we examine the case to determine if there was evidence to support the view of the jury. There is such evidence.

Trooper Mike Brandon, who investigated the accident, testified that the truck driven by Maxfield, after striking the Huck truck, moved on to the left and struck the median divider eighty-four feet east of the impact, then traveled three hundred and fifty-one feet up the left-hand lane along the divider until it came to a rest. In other words, the truck traveled 435 feet from the point of the collision. There was also evidence that Maxfield was driving with his lights on dim, but at any rate, we think a jury question was presented as to whether Maxfield was operating his vehicle at too great a speed under the circumstances, or whether he was keeping a proper lookout.

Nor do we find merit in the second contention. During cross-examination of Hamilton, counsel for appellees stated "I understand that the damages ran twelve thousand, seven hundred and ninety-four dollars and ninety-eight cents, according to a paper furnished me by your lawyer, that your insurance company paid for it". No objection of any nature was made. Subsequently, the record reflects the following:

"COUNSEL FOR APPELLEES:

Q. Did you pay that amount yourself?

---

[1]The record does not reveal that any such motion was made.

A. Yes, sir.

Q. No one paid that for you, that two thousand?

COUNSEL FOR APPELLANTS:

Your Honor, I am going to object under the Collateral Source Rule.

COUNSEL FOR APPELLEES:

He is giving us one figure here, and then another one. I don't care whether the insurance company paid it or not. I am curious as to why the figures are different.

THE WITNESS:

What figures are different?

JUDGE RHODES:

It would make no difference to who paid the bill. The gentleman would be entitled to recover if that much damage was done to his automobile.

COUNSEL FOR APPELLANTS:

No further questions."

While the objection may have been pertinent for the reason given, it certainly did not constitute an objection that the question was prejudicial because of the mentioning of insurance. We have held that the making of a specified objection has the effect of waiving all other objections. *Woods* v. *Pearce*, 230 Ark. 859, 327 S. W. 2d 377. There was no request for a mistrial, nor even a request that the jury be admonished, although the statement of the court, quoted above, is somewhat in the nature of an admonishment. It follows that there was no reversible error.

Since we have found no error up to this point, it becomes unnecessary to discuss whether the court erred in excluding proof of loss of profits. In upholding the judgment for appellees on the question of liability, questions relating to proper evidence in support of a recovery, become moot.

Affirmed.